**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AUSTIN K. FITE, individually, | No. 54325-7-II |
| Respondent, | |
| v. | |
| LEE R. MUDD and "JANE DOE" MUDD, individually and husband and wife, and the marital community comprised thereof; and CITY OF PUYALLUP, a Municipal Corporation under the laws of the State of Washington, | ORDER GRANTING MOTION FOR RECONSIDERATION IN PART AND AMENDING OPINION |
| Appellant. | |

The published opinion in this matter was filed on November 9, 2021. After consideration, we grant Respondent's motion for reconsideration in part, and amend the opinion as follows:

On page 2, the last sentence of paragraph two stating:

Accordingly, we reverse and remand for a new trial.

is edited to state:

Accordingly, we reverse and remand for a new trial on liability and allocation of fault only.

One page 21, the last sentence of the opinion stating:

Accordingly, we reverse and remand for a new trial.

is edited to state:

Accordingly, we reverse and remand for a new trial on liability and allocation of

fault only.

54325-7-II

We further add the following footnote to the published opinion:

*footnote:  Judge Sutton concurred as a panel judge to this case.  Judge Sutton has since retired and the Chief Judge appointed a new panel on reconsideration.

IT IS SO ORDERED.

_____
Veljacic, J.

We concur:

_____
Glasgow, C.J.

_____
Price, J.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AUSTIN K. FITE, individually,<br><br>Respondent,<br><br>v.<br><br>LEE R. MUDD and "JANE DOE" MUDD, individually and husband and wife, and the marital community comprised thereof; and CITY OF PUYALLUP, a Municipal Corporation under the laws of the State of Washington,<br><br>Appellant. | No. 54325-7-II<br><br><br><br>PUBLISHED OPINION |

VELJACIC, J. — Lee Mudd struck Austin Fite with his truck while Fite was riding his skateboard through a crosswalk. A jury awarded Fite $6.5 million in damages and found Mudd 33 percent at fault and the City of Puyallup (Puyallup) 67 percent at fault. The jury assigned no liability to Fite. Puyallup argues on appeal that the trial court erred in striking its intoxication affirmative defense on summary judgment, and in separately excluding evidence of intoxication.

Puyallup also argues that the court erred by submitting an instruction to the jury that favored Fite's theory of the case by instructing the jury, with instruction 28, to consider the "totality of the circumstances" in determining whether the crosswalk was safe, and by stating that a crosswalk may be unsafe even when there is no violation of statutes, regulations, or guidelines.

54325-7-II

Puyallup further argues that the trial court erred in granting summary judgment regarding Fite's duty of care, erred in admitting two police reports, erred in denying Puyallup the opportunity to impeach a witness, and erred in excluding evidence of Fite's speed and events of the accident.

The trial court erred by granting Fite's motion for summary judgment prohibiting Puyallup from presenting the intoxication affirmative defense under RCW 5.40.060 because the evidence considered by the court at summary judgment created genuine issues of material fact preventing summary judgment. It also erred by submitting jury instruction 28 because the instruction included "totality of the circumstances" language but failed to explain what circumstances the jury should consider except for a sentence that improperly emphasized Fite's theory of the case. Lastly, the trial court erred in admitting hearsay police reports under the business records exception and by denying Puyallup the opportunity to impeach the only eyewitness to Fite's behavior immediately preceding the accident. Accordingly, we reverse and remand for a new trial.

FACTS

Mudd struck Fite while Fite traveled on a skateboard through a crosswalk. Fite was taken to the hospital and treated for his injuries. The hospital performed a screening urinalysis on Fite. Such test was not conducted to determine Fite's intoxication at the time of the accident but rather to assist in his medical treatment. The screening revealed Fite's urine contained tetrahydrocannabinol (THC). The screening used was not for the purpose of determining blood-THC concentration, and therefore lacked that information. Fite sued Mudd and Puyallup.

An eyewitness, Kelly Boutte, provided an initial sworn statement, stating that "[a]t no time did I see [Fite] stop. At no time did I see him look left. At no time did I see him look right." Clerk's Papers (CP) at 1153. She later amended her statement to read, "I do not recall if he looked r[igh]t or left one way or another." CP at 1294.

4

54325-7-II

Fite moved for partial summary judgment. In Puyallup's response to Fite's motion for summary judgment, it argued Fite's intoxication was evidence of his comparative fault. Puyallup relied on the urine drug screening and a later statement Fite made to his doctor that he was "high on [c]annabis while riding his skateboard" on the day of the accident. CP at 908. Fite replied that Puyallup's intoxication defense was factually unsupported and that Fite was fault free. The court granted Fite's motion for summary judgment dismissing the intoxication affirmative defense.

While Fite's comment to his doctor was part of the evidence provided by Puyallup in its response to Fite's motion, the court did not address the comment. In its summary judgment order, the court ruled that Puyallup was barred from presenting an intoxication defense under RCW 5.40.060. However, the court denied Fite's motion to establish that he had no comparative fault, and clarified Fite's legal duty, ruling "Fite was not *specifically* required to look right and look left before entering the crosswalk, only to look for approaching vehicles." CP at 1303.

Puyallup moved for reconsideration on its intoxication defense based in part on new expert witness testimony, which it submitted for the first time on reconsideration. The court again concluded that Puyallup had not provided evidence establishing when Fite had ingested marijuana or that Fite was experiencing any symptoms of THC intoxication at the time of the accident as required by RCW 5.40.060.

Fite later requested, and the court granted, a motion in limine to exclude all evidence of Fite's drug and alcohol use (that apparently included his statement to his doctor). Puyallup also filed a motion in limine seeking to exclude two police reports—exhibits 48A and 48B—detailing two other accidents that had occurred in the crosswalk at issue. The court granted Puyallup's motion.

5

54325-7-II

However, during Fite's cross-examination of a traffic detective with experience investigating pedestrian accidents, he asked whether the detective had studied the excluded police reports, asking "Have you ever had occasion to study all of the accident reports in the intersection of 5th and 31st that we've got here?" 14 Report of Proceedings (RP) (Nov. 20, 2019) at 2630. Fite questioned the detective further, asking:

> Q. You don't know whether or not there'd been pedestrian accidents and how many there have been?
> A. I can say that there have not been many and the reason I can say that is because I'm consulted very often on any kind of pedestrian accident because of my expertise.
> Q. The true answer is, you don't know; is that right?
> A. I cannot give you a number, absolutely.
> Q. But you know there have been some?
> A. I know there's been one. I don't know of the other ones.
> Q. And you know that there have been some pedestrian accidents in that particular crosswalk, don't you?
> A. I know of this one, sir.
> Q. This one in this case?
> A. This case.
> Q. You don't know about any others?
> A. None that come to mind, no.

RP (Nov. 20, 2019) at 2630-31. To counter this testimony, Fite offered exhibits 48A and 48B as business records. The court admitted the exhibits as business records over Puyallup's hearsay objection.

Exhibit 48A contained an investigation into a collision between two cars while stopped at a crosswalk. The report includes a determination of fault based on the officer's interviews with the drivers involved in the accident and a witness. No pedestrians were injured in the accident. Exhibit 48B described witness testimony that a bicyclist entered a roadway without looking, swerved in front of a car, and was hit. Fite relied on the incongruities between the traffic officer's

6

54325-7-II

testimony and the police reports in his closing arguments. He claimed that Puyallup attempted to hide the other accidents and that the traffic officer had tried to mislead the jury.

At trial, Puyallup requested the opportunity to impeach the eyewitness, Boutte, with her prior statement. The trial court prohibited Puyallup from impeaching Boutte, ruling that Boutte's prior statement conflicted with its summary judgment order that Fite did not have a duty to look left or right. Boutte testified at trial, stating "I did not see [Fite] stop before crossing the road." 11 RP at 1874.

During conferencing on the jury instructions, Fite requested an instruction that included that the jury should consider the "totality of the circumstances" when determining whether the crosswalk was safe. 17 RP at 3185. That language came from *Xiao Ping Chen v. City of Seattle*, 153 Wn. App. 890, 899-900, 223 P.3d 1230 (2009). Puyallup objected to that language and asserted that WPI 140.01[1] alone was the correct jury instruction. Instead, the court crafted instruction 28, which read:

> Whether a roadway or crosswalk is reasonably safe for ordinary travel must be determined based on the "totality of the circumstances." A roadway or crosswalk can be unsafe for ordinary travel even when there is no violation of statutes, regulations or guidelines concerning roadways and crosswalks.

CP at 3190.

---

[1] 6 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.01, at 829 (2019) (WPI).

54325-7-II

The jury awarded Fite approximately $6.5 million in damages and found Mudd was 33 percent at fault and Puyallup was 67 percent at fault for the accident. Puyallup appeals the liability verdict but not the damage award.[2]

ANALYSIS

I. INTOXICATION DEFENSE UNDER RCW 5.40.060

Puyallup argues that the trial court erred when it prohibited Puyallup from presenting a defense under RCW 5.40.060 by excluding evidence of Fite's intoxication. Fite argues that Puyallup failed to produce evidence that would satisfy RCW 5.40.060. We conclude that the trial court erred in ruling as a matter of law that Puyallup could not present the affirmative defense of evidence of Fite's intoxication.

A. Standard of Review

We review a superior court's order granting summary judgment de novo, and perform the same inquiry as the superior court. *RockRock Grp, LLC v. Value Logic, LLC*, 194 Wn. App. 904, 913, 380 P.3d 545 (2016). We consider the facts and the inferences from the facts in a light most favorable to the nonmoving party. *Bremerton Pub. Safety Ass'n v. City of Bremerton*, 104 Wn. App. 226, 230, 15 P.3d 688 (2001). The court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *RockRock Grp*, 194 Wn. App. at 913; CR 56(c).

---

[2] Two amici briefs and one response were also submitted. Both amici put forward arguments substantially similar to Puyallup's. The original arguments the amici raise were not addressed at trial, and we do not consider issues raised first and only by amici. *See Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 631, 71 P.3d 644 (2003).

B.      Legal Principles

RCW 5.40.060 provides a complete defense for liability if a defendant can show the plaintiff's intoxication was the proximate cause of the injury and the plaintiff was more than 50 percent at fault. *Peralta v. State*, 187 Wn.2d 888, 893-94, 389 P.3d 596 (2017). RCW 5.40.060(1) states in relevant part:

> [I]t is a complete defense to an action for damages for personal injury or wrongful death that the person injured or killed was under the influence of intoxicating liquor or any drug at the time of the occurrence causing the injury or death and that such condition was a proximate cause of the injury or death and the trier of fact finds such person to have been more than fifty percent at fault.

"To determine if an individual was 'under the influence of intoxicating liquor,' the intoxication defense statute incorporates by reference the definition of 'under the influence of intoxicating liquor or drugs' in RCW 46.61.502, the [driving while under the influence] DUI statute." *Peralta*, 187 Wn.2d at 897; RCW 5.40.060(1). RCW 46.61.502 states in relevant part:

> (1) A person is guilty of driving while under the influence of intoxicating liquor, marijuana, or any drug if the person drives a vehicle within this state:
> . . . .
> (c) While the person is under the influence of or affected by intoxicating liquor, marijuana, or any drug.

To satisfy RCW 46.61.502(c), a party must prove beyond a reasonable doubt that at the time of the accident, the person was under the influence of marijuana so as to impair his ability to operate to an appreciable degree. *Peralta*, 187 Wn.2d at 898. A party's admission of intoxication may satisfy RCW 46.61.502(c). *Id*. at 903.

In *Peralta*, a driver admitted to being "under the influence of intoxicating liquors," and the trial court determined this established intoxication under RCW 46.61.502. *Id*. at 893. On appeal, the court held that the trial court was reasonable in concluding such admission was conclusive

9

evidence of intoxication under RCW 46.61.502(c) and that the driver was bound by such admission. *Id*. at 903-04.

In a recent case, the Washington Supreme Court ruled that a toxicology report alone is insufficient to prove someone was impaired by intoxicating liquors, because the causation component of the statute examines a person's behavior not simply whether they were intoxicated. *Gerlach v. Cove Apt., LLC*, 196 Wn.2d 111, 125-26, 471 P.3d 181 (2020). The court held that "without other evidence or testimony that could connect Gerlach's [blood alcohol concentration (BAC)] results to behavior that caused her [injury], the BAC results were not relevant to whether her intoxication was a proximate cause of her injuries or to her degree of fault." *Id*. at 126.

C.    Analysis

Puyallup argues that Fite's admission to his doctor that he was "high on [c]annabis" during the accident and his urinalysis result that was positive for THC are sufficient evidence to show he was intoxicated under RCW 46.61.502. CP at 908.

Fite argues that *Gerlach* supports the trial court's prohibition of the affirmative defense. However, *Gerlach*'s holding is narrower than a blanket exclusion of all urinalyses or toxicology reports showing the presence of intoxicants, so its holding is not dispositive of the summary judgment issue for the parties here. Instead, *Gerlach* only prohibits Puyallup from relying solely on such a report to support the affirmative defense under RCW 5.40.060 because a toxicology report cannot prove a person behaved in an impaired fashion, i.e. that they were affected to an appreciable degree, as required under RCW 46.61.502. *See Gerlach*, 196 Wn.2d at 126. Under the defense, proving intoxication's impact on behavior is necessary. So, the urine screening here is still available for our de novo consideration of whether there was an issue of fact as to Fite's intoxication. The screening was available to the trial court for the same reason.

54325-7-II

However, even without the urinalysis, Fite's admission that he was high during the accident does potentially satisfy RCW 46.61.502(c) per *Peralta*. *See* 187 Wn.2d at 903-04. The trial court did not address why Fite's admission to his doctor could not satisfy RCW 46.61.502(c), only suggesting that the comment could be prejudicial. But prejudice is not the question on summary judgment. Instead, the question was whether, in the light most favorable to Puyallup, there was some evidence to create an issue of fact for the jury relating to the affirmative defense. And here there was.

A party's admission of intoxication may satisfy RCW 46.61.502(c). *Peralta*, 187 Wn.2d at 903-04. While the trial court stated that there was no other evidence of Fite's intoxication, witness testimony suggested that he failed to stop before entering the crosswalk, and he also failed to make any move to avoid Mudd's vehicle. When coupled with the positive urine screening and his admission, and when viewed in the light most favorable to Puyallup, Fite's behavior could have contributed to the accident; the behavior could have resulted from impairment due to being appreciably affected by marijuana; and a reasonable jury could have concluded accordingly. The evidence creates a genuine issue of material fact that Puyallup should have had the opportunity to present to the jury. The trial court erred by granting Fite's motion for partial summary judgment excluding the affirmative defense.

II.     JURY INSTRUCTION 28

Puyallup argues that the first sentence of jury instruction 28 misstates the law of municipal fault and that the second sentence improperly emphasized Fite's theory of the case. We agree that the trial court abused its discretion by submitting instruction 28 to the jury because the instruction improperly emphasized Fite's theory of the case by failing to include a sentence in the instruction

11

stating that compliance with statutes, regulations, and guidelines may be evidence that the crosswalk was safe.

### A.      Standard of Review

Whether to give a specific instruction is within the discretion of the trial court, and we review such decision for an abuse of discretion. *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 767, 389 P.3d 517 (2017). A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *Bengtsson v. Sunnyworld Int'l, Inc.*, 14 Wn. App. 2d 91, 99, 469 P.3d 339 (2020). We review de novo whether a jury instruction correctly states the law. *Intuitive Surgical, Inc.*, 187 Wn.2d at 767.

### B.      The trial court did not err by crafting a jury instruction instead of using the pattern instruction

Jury instructions must allow counsel to argue their theory of the case, may not be misleading, and must properly inform the trier of fact of the applicable law. *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002). A misleading instruction does not require reversal unless the appealing party can prove the instruction was prejudicial. *Id.*

Where substantial evidence supports a party's theory of the case, trial courts are required to instruct the jury on the theory. *Intuitive Surgical, Inc.*, 187 Wn.2d at 767. "To determine whether to give an instruction, the trial judge 'must merely decide whether the record contains the kind of facts to which the doctrine applies.'" *Id*. at 767 (quoting *Kappelman v. Lutz*, 167 Wn.2d 1, 6, 217 P.3d 286 (2009)).

Where an instruction focuses the jury's inquiry on one theory of the case over another, the trial court abuses its discretion. *Cornejo v. State*, 57 Wn. App. 314, 320-21, 788 P.2d 554 (1990). In *Cornejo*, the repetition of one party's theory of the case in jury instructions emphasized that

12

theory over that of the opposing party. *Id*. On appeal, the court determined this emphasis led to the trial court favoring one theory over another, which was an abuse of discretion. *Id*.

A trial court deprives a party of a fair trial when it issues a jury instruction that emphasizes one party "to the explicit detriment of the other party." *Brown v. Dahl*, 41 Wn. App. 565, 579, 705 P.2d 781 (1985).

Puyallup first argues that jury instruction 28 was improper because it was crafted from case law and WPI 140.01 correctly states the law of municipal fault. It cites to *Swope v. Sundgren*, 73 Wn.2d 747, 750, 440 P.2d 494 (1968), and *Turner v. City of Tacoma*, 72 Wn.2d 1029, 1034, 435 P.2d 927 (1967), for the proposition that trial courts should not craft jury instructions from case law. However, neither case holds a trial court is prohibited from doing so, but merely that opinions are not written with the intent that they will serve as the basis for jury instructions. *See Sundgren*, 73 Wn.2d at 750; *Turner*, 72 Wn.2d at 1034. Accordingly, Puyallup's argument fails.

C.     Municipal Fault, Generally

Under common law, municipalities are held to the general duty of care of a reasonable person under the circumstances. *Chen*, 153 Wn. App. at 899-900. This duty requires municipalities to maintain roadways that are reasonably safe for travel. *Id*. at 900. A municipality's duty extends beyond merely complying with applicable laws and regulations. *Wuthrich v. King County*, 185 Wn.2d 19, 26, 366 P.3d 926 (2016). "Whether the roadway was reasonably safe and whether it was reasonable for [a municipality] to take (or not take) any corrective actions are questions of fact that must be answered in light of the totality of the circumstances." *Id*. at 27; *see also Chen*, 153 Wn. App. at 894 ("A trier of fact may conclude that a municipality breached its duty of care based on the totality of the circumstances established by the evidence.").

54325-7-II

Statutes and regulations can help define a municipality's duty of care. *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). Specifically, the Federal Highway Administration's Manual on Uniform Traffic Control Devices (MUTCD) "provides at least some evidence of the appropriate duty." *Id*. Therefore, compliance with applicable statutes and regulations may be used to show a municipality met its duty of care. The Washington State Department of Transportation (WSDOT) must implement the Federal Highway Administration's MUTCD. RCW 47.36.030(1); WAC 468-95-010, et seq. Municipalities must maintain roadways and comply with roadway design statutes. WAC 136-11-040; RCW 36.86.080.

Similarly, under RCW 5.40.050, a municipality's failure to comply with a duty imposed by statute, ordinance, or administrative rule may be considered by the trier of fact as evidence of negligence. *See* RCW 5.40.050. RCW 5.40.050 states in relevant part: "A breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as evidence of negligence."

In *Keller*, 146 Wn.2d at 252-54, the Washington Supreme Court crafted a jury instruction on a municipality's duty for road design and maintenance. Such instruction became WPI 140.01, and states:

> The [county] [city] [town] [state] has a duty to exercise ordinary care in the [design] [construction] [maintenance] [repair] of its public [roads] [streets] [sidewalks] [bridges] to keep them in a reasonably safe condition for ordinary travel.

D.      Analysis: Instruction 28 Improperly Emphasized Fite's Theory

Jury instruction 28 provided:

14

> Whether a roadway or crosswalk is reasonably safe for ordinary travel must be determined based on the "totality of the circumstances." A roadway or crosswalk can be unsafe for ordinary travel even when there is no violation of statutes, regulations or guidelines concerning roadways and crosswalks.

CP at 3190.

The trial court improperly emphasized Fite's theory by including the second sentence in instruction 28 without also including language stating that compliance with statutes, regulations, or guidelines can be evidence the crosswalk was safe.

The common law of municipal fault states that a municipality can violate its duty of care even when it complies with statutes and regulations. *Wuthrich*, 185 Wn.2d at 26. However, the second sentence of instruction 28, while a correct statement of the law, improperly focuses the jury on Fite's theory when evaluating Puyallup's fault. This theory—that a crosswalk may be unsafe even if it complies with statutes and regulations—exclusively supports Fite's theory of the case. The instruction fails to include additional language on evidence the jury may consider that supports Puyallup's theory of the case—namely that compliance with statutes and regulations is evidence it met its duty of care.

*Cornejo* is instructive here. In *Cornejo*, the trial court abused its discretion when it submitted instructions to the jury that overemphasized one party's theory. 57 Wn. App. at 320-21. Here, the emphasis favored Fite and prevented Puyallup from arguing that it met its duty of care because it complied with applicable statutes and regulations. Because the second sentence of jury instruction 28 emphasized Fite's theory of the case and improperly limited Puyallup's, the trial court abused its discretion and denied Puyallup a fair trial.

Puyallup next argues that the "totality of the circumstances" language in instruction 28 is improper because the circumstances in *Chen* are absent here. According to Puyallup, that court relied on evidence of accidents, deaths, complaints, the existence of a safety refuge island, the fact

15

that there were traffic signals at other similar intersections, and the City's admission that similar crosswalks were dangerous. However, "totality of the circumstances" is not limited to those circumstances present in *Chen*. The case law clearly holds, without limitation, that finders of fact should evaluate whether a municipality's road maintenance and design satisfied its legal duty under "totality of the circumstances." *See Wuthrich*, 185 Wn.2d at 27; *Chen*, 153 Wn. App. at 894.

Such holdings imply that the finder of fact should examine those circumstances relevant to the case at bar to determine whether a municipality has satisfied its duty of care. So, the term "totality of the circumstances" is properly a part of the standard by which a municipality's duty is measured, but it is not the whole of the standard.

We address the remaining issues in this case because they are likely to be repeated at trial, however, they do not serve as independent bases for reversal.

III.     ADMITTED POLICE REPORTS

Puyallup argues that the trial court abused its discretion when it admitted police reports under the business records exception to the hearsay prohibition. We agree with Puyallup.

While Puyallup secured exclusion of the reports via the court's order after motions in limine, Fite argues that Puyallup's witness opened the door to the admittance of the police reports when he testified that he did not know of any other accidents in the crosswalk where Fite was injured.

A.     Standard of Review

We review evidentiary rulings for an abuse of discretion. *Peralta*, 187 Wn.2d at 894. A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *Bengtsson*, 14 Wn. App. 2d at 99.

16

54325-7-II

B.      Legal principles

The business records exception to the hearsay prohibition states,

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020.

The business records exception generally applies to objective records of regularly recorded activities. *In re Detention of Coe*, 175 Wn.2d 482, 505, 286 P.3d 29 (2012). The exception does not apply to those records created through skill, judgment, or discretion. *Id*. Police reports do not satisfy the exception because they require the officer creating the report to produce a subjective summary of the officer's investigation. *Id*.

When a party opens the door to a subject, the opposing party may request admittance of previously excluded evidence on that subject during cross or redirect examination. *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969). A recent case from Division Three explains that the open door doctrine applies to evidence excluded due to policy or prejudice not hearsay. *State v. Rushworth*, 12 Wn. App. 2d 466, 473, 458 P.3d 1192 (2020). The doctrine "permits a court to admit evidence on a topic that would normally be excluded for reasons of policy or undue prejudice when raised by the party who would ordinarily benefit from exclusion." *Id*. Therefore, a party may not open the door through strategic questioning of a witness and then seek to admit excluded evidence based on its own questioning.

54325-7-II

C.      Analysis

We conclude that the trial court abused its discretion by admitting the police reports under the business records exception to hearsay.  Exhibits 48A and 48B are two police reports detailing accidents that occurred at the same intersection where Fite was injured.  Notably, neither accident involved a pedestrian—exhibit 48A describes a car that was rear ended while stopped at a crosswalk, and exhibit 48B describes a collision between a car and bicycle that occurred when the bicyclist entered the street without looking and swerved in front of a car.

Both reports detail eyewitness testimony and the conclusions of the responding officer.  Because police reports that include eyewitness testimony and the conclusions of officers are not objective records, they are not admissible under the business records exception.  *See Coe*, 175 Wn.2d at 505.

Further, Puyallup did not open the door to the admittance of the police reports because it was Fite that elicited the statements about the prior accident reports.  A party seeking to admit hearsay evidence may not do so by laying a trap and forcing a witness to spring it.  *See Rushworth*, 12 Wn. App. 2d at 473.  While Fite argues Puyallup opened the door to admittance of the police reports, Fite only cites to its own cross-examination of the detective.  During Fite's cross-examination, he asked the detective about the police reports that had been previously excluded, and when the witness denied knowledge of them, Fite sought to admit them.  Such questioning does not constitute opening the door.  The trial court abused its discretion by admitting the reports under the business records hearsay exception and the open door doctrine.

18

54325-7-II

IV.   FITE'S COMPARATIVE FAULT

Puyallup argues that when the court denied Fite's motion for summary judgment as to his lack of comparative fault, the court erred by adding "Fite was not *specifically* required to look right and look left before entering the crosswalk, only to look for approaching vehicles." CP at 1303. Such order prohibited Puyallup from arguing Fite was required to look left or right, but did not prevent Puyallup from arguing Fite failed to look, generally. Puyallup argues that by eliminating its opportunity to ask witnesses whether Fite looked left and right before entering the crosswalk, it was denied an opportunity to establish Fite's comparative fault.[3] We disagree with Puyallup.

A.    Legal Principles

Pedestrians may generally assume that drivers will recognize their right of way when entering a crosswalk. *Chen*, 153 Wn. App. at 906. However, a pedestrian may not suddenly enter a crosswalk without providing approaching vehicles time to stop. *Id*. None of the case law identifies the particular actions pedestrians must take to satisfy this duty in any greater detail than the above.

C.    Analysis

We conclude that the trial court's statement on Fite's duty was an accurate statement of the law and did not deprive Puyallup the opportunity to argue he failed to look before entering the crosswalk. The trial court ordered that Puyallup was prohibited from arguing Fite had a duty *to*

---

[3] Puyallup also argues that the jury should have been able to evaluate whether Fite was negligent when he failed to avoid Mudd's truck after entering the crosswalk. However, Puyallup fails to identify a ruling of the trial court that denied it the opportunity to argue this theory. We refuse to examine the issue. *See* RAP 10.3(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

19

*look left and right* prior to entering the crosswalk. However, the trial court allowed Puyallup to argue that Fite did not look prior to crossing.

Puyallup fails to cite relevant authority that establishes a pedestrian must look left and right before entering a crosswalk. Case law shows pedestrians must look before entering a crosswalk. *See Chen*, 153 Wn. App. at 906. More importantly, contrary to Puyallup's assertion, it was not denied an opportunity to question witnesses about whether they saw Fite look before entering the crosswalk. Indeed, one witness clearly stated that "I did not see [Fite] stop before crossing the road." 11 RP at 1874.

The court prohibited Puyallup from arguing that Fite was at fault by specifically not looking left and right before entering the crosswalk; the court did not err in doing so.

V.     PRIOR INCONSISTENT STATEMENT

Puyallup argues that the trial court abused its discretion by excluding Boutte's prior statement, because it was admissible to impeach as a prior inconsistent statement. Fite argues that Boutte's prior statement was not inconsistent and that if excluding the statement was an error, Puyallup was not prejudiced by the decision. We agree that the trial court abused its discretion by denying Puyallup the opportunity to impeach Boutte because her prior statement was inconsistent.

A.     Standard of Review

Again, we review evidentiary rulings for an abuse of discretion. *Peralta*, 187 Wn.2d at 894. A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. *Bengtsson*, 14 Wn. App. 2d at 99.

B.      Legal Principles

A party may impeach a witness using a prior inconsistent statement. *State v. Garland*, 169 Wn. App. 869, 885, 282 P.3d 1137 (2012). "'Impeachment is evidence, usually prior inconsistent statements, offered solely to show the witness is not truthful. Such evidence may not be used to argue that the witness is guilty or even that the facts contained in the prior statement are substantively true.'" *Id*. (quoting *State v. Burke*, 163 Wn.2d 204, 219, 181 P.3d 1 (2008) (citation omitted)). ER 613(b) empowers a party to impeach a witness using a prior inconsistent statement, but "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Therefore, a party seeking to impeach a witness must directly confront the witness with their prior statement and provide them an opportunity to respond. *Id*. Courts examine the whole impression of a statement to determine if two statements are inconsistent, asking "'Do the two expressions appear to have been produced by inconsistent beliefs?'" *State v. Newbern*, 95 Wn. App. 277, 294, 975 P.2d 1041 (1999) (quoting *Sterling v. Radford*, 126 Wash. 372, 375, 218 P. 205 (1923)).

C.      Analysis

We conclude that the trial court abused its discretion by denying Puyallup the opportunity to impeach Boutte. The trial court prohibited Puyallup from attempting to impeach Boutte using her prior inconsistent statement because Boutte's prior statement conflicted with its summary judgment order that Fite did not have a duty to look left or right.[4] At trial, Boutte testified that she did not remember if Fite had looked before entering the crosswalk.

---

[4] We address the arguments as presented by the parties. We do not address the propriety of a court making an evidentiary ruling at the time of ruling in a summary judgment order, as the court did here.

21

54325-7-II

The court did not articulate an evidentiary basis for excluding Boutte's prior inconsistent statement, and instead relied entirely on its summary judgment order that clarified Fite's duty of care. The trial court seemed to suggest that because Fite had no specific duty to look left and right, any testimony that he failed to look left or right was inadmissible. However, legal duty aside, Boutte should have been permitted to testify about her prior statement and respond to questions regarding her credibility.

The prior inconsistent statement was admissible and the trial court erred by excluding it. Indeed, Boutte's two statements are inconsistent. Her initial statement, "At no time did I see him stop. At no time did I see him look left. At no time did I see him look right," CP at 1153, affirmatively states she did not see Fite stop, or look, while her amended statement, "I do not *recall* if he looked r[igh]t or left one way or another," CP at 1294 (emphasis added), states she does not *remember* whether he looked, and is silent on whether he stopped. The prior statement was inconsistent with her trial testimony. Therefore, the statement was admissible for impeachment purposes. *See Newbern*, 95 Wn. App. at 293-95. The court should have allowed the jury a full opportunity to assess Boutte's credibility by hearing the prior statement that was inconsistent with her trial testimony. Denying Puyallup the opportunity to question Boutte's credibility was unreasonable and based on untenable grounds.

## CONCLUSION

The trial court erred by granting Fite's motion for summary judgment prohibiting Puyallup from presenting evidence under RCW 5.40.060 because evidence of Fite's intoxication created material issues of fact preventing summary judgment. It also erred by submitting jury instruction 28 to the jury because it improperly emphasized Fite's theory of the case, and prohibited Puyallup from presenting its defense. Lastly, the trial court erred in admitting hearsay police reports under

22

54325-7-II

the business records exception and by denying Puyallup the opportunity to impeach the only eyewitness to Fite's behavior immediately preceding the accident. Accordingly, we reverse and remand for a new trial.

_____
Veljacic, J.

We concur:

_____
Sutton, J.P.T.

_____
Glasgow, A.C.J.