138 P.3d 654 (2006)
HOMEWORKS CONSTRUCTION, INC., Appellant,
v.
Dan WELLS and Jane Doe Wells, d/b/a Wells Exterior Walls Systems, and Gary Thompson and Jane Doe Thompson, d/b/a Portland Plastering, Respondents.
Dan Wells and Jane Doe Wells, d/b/a Wells Exterior Walls System, Third Party Plaintiffs,
v.
Dryvit Systems, Inc., a Rhode Island corporation, and Insulation Supply LLC, a Virginia limited liability company formerly known as Oregon Insulation Supply, Inc. dba Insulation Supply, Inc., and Exsys, an Oregon corporation, Third Party Defendants.
No. 33382-1-II.
Court of Appeals of Washington, Division 2.
July 11, 2006.
Douglas Fredrick Foley, Foley & Buxman PLLC, Steven C. Andersen, Law Office of Steven C. Andersen, Vancouver, WA, Jerret E. Sale, Deborah Lynn Carstens, Bullivant Houser Bailey PC, Seattle, WA, for Appellant.
Mark Edward Mills, Law Offices of William D. Garcia, Seattle, WA, Michael Grant Sullivan, Smith Freed & Eberhard PC, Portland, OR, for Respondent.
Kenneth F. Hobbs, Stafford Frey Cooper, Seattle, WA, for Other Party Dryvit Systems Ins.
Arthur D. Leritz, Gardner Bond Trabolsi PLLC, Seattle, WA, for Other Party Insulation Supply.
*655 BRIDGEWATER, J.
¶ 1 Homeworks Construction, Inc. (Homeworks), a general contractor, appeals a summary judgment order dismissing its contract and indemnity claims against subcontractors, Dan Wells d/b/a Wells Exterior Wall Systems (Wells) and Gary and Jane Doe Thompson d/b/a Portland Plastering (Thompson), who installed synthetic stucco on a house. The trial court granted summary judgment as a sanction for spoliation of evidence because the homeowners repaired the house before Wells and Thompson could inspect the damage. But when State Farm Fire and Casualty Company (State Farm), Homework's insurer, paid the homeowners' claim for damages for faulty installation, State Farm had no duty to notify the subcontractors who installed the stucco that the homeowners might repair the house. It did not control the house and had no access to the premises being repaired. We hold that neither Homeworks nor State Farm was responsible for "spoliation" of the evidence when the homeowners repaired the damage to the house before the subcontractors could hire experts to examine the house. Thus, the trial court abused its discretion by sanctioning Homeworks, and it improperly granted summary judgment in favor of the subcontractors. We reverse and remand for further proceedings.

FACTS
¶ 2 In December 1996, Jim and Serena Lucey hired Homeworks to build a house. Homeworks acted as the general contractor and hired Wells to apply synthetic stucco, called Exterior Insulation Finish System (EIFS), to the house. In November 1997, Homeworks hired Thompson to complete the EIFS application. The house was completed in December 1997.
¶ 3 By October 2000, the Luceys noticed some water damage in the house. They hired Western Architectural (Western) to investigate the cause of the damage. On October 18, 2000, Western reported that the EIFS was improperly installed and recommended a series of repairs. On July 24, 2001, State Farm's internal claims process identified Wells and Thompson as the subcontractors in this case.
¶ 4 State Farm hired an expert, JRP Engineering, Inc. (JRP), to investigate the water damage at the Luceys' house. JRP visited the site in August 2001. In June 2002, almost a year later, JRP issued its report finding that improper installation of the EIFS had caused the water damage. In October 2002, Western issued a second report, presumably on behalf of the Luceys, confirming that the EIFS had been improperly installed.
¶ 5 Nothing in the record indicates that State Farm, Homeworks, or the Luceys notified the subcontractors, Wells and Thompson, of any problems with the EIFS installation during this process.
¶ 6 On June 11, 2003, almost two years after the original inspection indicated that the EIFS was improperly applied, State Farm, acting on behalf of Homeworks, settled the Luceys' claim for $318,812.24. About three weeks later, on July 3, 2003, State Farm referred the case to its subrogation unit. Six days later, State Farm, on behalf of Homeworks, sued Wells, Johnson, and the EIFS manufacturer.[1] The complaint alleged breach of contract, negligence, and indemnity causes of action against Thompson and Wells. Homeworks/State Farm served Wells on July 28, 2003, and Thompson on July 26, 2003. Wells's counsel filed its first appearance on August 21, 2003.
¶ 7 Meanwhile, the Luceys hired J S Frasier Construction and began their house repair on July 23. The Luceys did not notify State Farm, Homeworks, Wells, or Thompson that they were repairing the house. By July 31, 97 percent of the EIFS had been removed. The repair work seems to have been substantially completed by early September. On November 3, Wells learned that the Luceys' house had been repaired and that all of the EIFS had been discarded when Wells's counsel visited the house to take pictures.
*656 ¶ 8 Wells hired a construction consultant, Joe Johnson, to review Western's and JRP's reports to give an expert opinion on the cause and extent of the water damage to the Luceys' house. In a letter, Wells notified Johnson that it was going to argue that State Farm spoiled the EIFS evidence and prevented Wells from mounting an adequate defense.
¶ 9 After examining Western's and JRP's reports and the photographs, Johnson concluded that:
Because I was unable to conduct an on-site inspection, and was allowed only to review documentation and photographs produced by others, I am unable to render an opinion on the extent of damages at the [h]ouse.
Clerk's Papers (CP) at 39. In his deposition, Johnson explained that site inspections are integral to determining causation. He also determined that the existing reports failed to fully document the as-built condition of the house or the extent and location of all the damage. He further indicated that the pictures were not sufficient and that he would need hundreds of removal and repair photographs. As a result, he concluded that Homeworks/State Farm possessed an investigative advantage that prejudiced the subcontractors because he could not adequately evaluate the cause or extent of the damages to the Luceys' house.
¶ 10 Relying on Johnson's declaration and deposition, Wells and Thompson filed a motion requesting that the trial court (1) find that Homeworks/State Farm spoiled critical evidence, (2) exclude Homeworks/State Farm's expert's reports, and (3) grant summary judgment because no competent evidence remained to prove that Wells and Thompson breached their contract.
¶ 11 Homeworks/State Farm argued that the Luceys repaired the house without their knowledge, that Wells and Thompson had adequate time to conduct a site visit while the Luceys were repairing the house. They also filed a declaration from James Perrault of JRP concluding that, with all of the information included in the reports, "[A]n expert familiar with EIFS should be able to render an opinion as to liability and damages." CP at 124.
¶ 12 The trial court found that Homeworks/State Farm "spoliated evidence and that no less restrictive remedy was available than to grant summary judgment." CP at 259.

ANALYSIS
¶ 13 Homeworks/State Farm argues that because they did not control the house, the trial court improperly sanctioned them. In the alternative, they suggest that the sanction was too harsh because Wells and Thompson had alternative sources of information and the trial court could have granted relief short of summary judgment. Wells and Thompson acknowledge that, although Homeworks/State Farm did not control the house, both failed to take steps to preserve the EIFS evidence for Wells and Thompson to inspect. They argue that because the EIFS evidence was central to their defense, the sanction was appropriate. We do not address the arguments regarding remedies available for spoliation because we hold that Homeworks/State Farm was not liable for the spoliation.
¶ 14 We review a trial court's decisions regarding sanctions for discovery violations for abuse of discretion. Henderson v. Tyrrell, 80 Wash.App. 592, 604, 910 P.2d 522 (1996). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. State v. Perrett, 86 Wash.App. 312, 319, 936 P.2d 426 (1997) (citing Havens v. C & D Plastics, Inc., 124 Wash.2d 158, 168, 876 P.2d 435 (1994)), review denied, 133 Wash.2d 1019, 948 P.2d 387 (1997).
¶ 15 Washington case law on spoliation is sparse. The leading case is Henderson, a Division Three case in which the plaintiff, Tyrrell, was injured in a single car accident when Tyrrell's car left the road traveling 75 miles per hour. Henderson, 80 Wash.App. at 596, 910 P.2d 522. He alleged that he was the passenger in his car and that Henderson, the defendant, was the driver. Henderson, 80 Wash.App. at 597, 910 P.2d 522. Two years after the accident, but before trial, *657 Tyrrell had the car salvaged and destroyed even though the defendant's attorney had requested that Tyrrell preserve the car. Henderson, 80 Wash.App. at 603-04, 910 P.2d 522. The trial court declined to sanction Tyrrell because the real culprit was the passage of time. Henderson, 80 Wash.App. at 604, 910 P.2d 522.
¶ 16 The Henderson court relied on Pier 67, Inc. v. King County, 89 Wash.2d 379, 573 P.2d 2 (1977). In Pier 67, our Supreme Court reaffirmed the evidentiary conclusion that when a party fails to produce relevant evidence without satisfactory explanation, "the only inference which the finder of fact may draw is that such evidence would be unfavorable to him." Henderson, 80 Wash. App. at 606, 910 P.2d 522 (quoting Pier 67, 89 Wash.2d at 385-86, 573 P.2d 2). Division Three interpreted the phrase "satisfactory explanation" to mean that there are some situations in which a party may be excused for not preserving necessary relevant evidence. Henderson, 80 Wash.App. at 607, 910 P.2d 522.
¶ 17 The court then adopted Alaska's approach to determine when spoliation requires a sanction. Henderson, 80 Wash.App. at 607, 910 P.2d 522 (citing Sweet v. Sisters of Providence, 895 P.2d 484, 491 (Alaska 1995)). Under this test, the trial court weighs (1) the potential importance or relevance of the missing evidence; and (2) the culpability or fault of the adverse party. Henderson, 80 Wash.App. at 607, 910 P.2d 522. After weighing these two general factors, the trial court uses its discretion to craft an appropriate sanction. Henderson, 80 Wash.App. at 604, 910 P.2d 522. This division adopted the Henderson test in Marshall v. Bally's Pacwest, Inc., 94 Wash.App. 372, 381-82, 972 P.2d 475 (1999).
¶ 18 We will not address the first element at length because we hold that Homeworks/State Farm did not violate a duty to preserve evidence. But we note that, although seeing the EIFS on the house is undoubtedly important, Wells and Thompson have other sources of information. Specifically, they could consult (1) the report and photographs of Western, the homeowners' expert; (2) the report and photos of the expert State Farm hired; (3) the persons who bid on the home repair; (4) the persons who were contracted to do the repair, and their subcontractors; and (5) Wells and Thompson's own employees who did the original work. At the very least, Wells and Thompson could establish the extent of the damages through the testimony of the Luceys or the workers who did the repair. And as for the expert being present when the EIFS was removed, there is no evidence that Homeworks or State Farm viewed the demolition and repair, so all parties would have been in the same position at trial with regard to that issue. Wells and Thompson could certainly have called Joe Johnson to give his opinion that no one could determine the cause without such an observation, making it a jury issue. These facts do not enter into our consideration regarding "spoliation;" we merely point out that, while important, the destroyed evidence was by no means indispensable.
¶ 19 The crux of this case is the second factor of the Henderson test: the extent of Homeworks/State Farm's culpability in allowing the house to be repaired and evidence destroyed. With regard to this factor, the Henderson court indicated that in determining the adverse party's culpability, the trial court can consider the party's bad faith, whether that party had a duty to preserve the evidence, and whether the party knew that the evidence was important to the pending litigation. Henderson, 80 Wash.App. at 609-10, 910 P.2d 522. In Henderson, the court noted that "for a direct sanction to apply the spoliation must be in some way connected to the party against whom the sanction is directed." Henderson, 80 Wash. App. at 606, 910 P.2d 522. Homeworks/State Farm argue that because they did not control the house, they cannot be connected to the spoliation. We agree. Homeworks/State Farm had no control over the Luceys and because they did not know the Luceys were going to repair the house, they are not at fault for destroying evidence.
¶ 20 Washington Practice concludes that spoliation is "a term of art, referring to the legal conclusion that a party's destruction of evidence was both willful and improper." *658 KARL B. TEGLAND, 5 WASHINGTON PRACTICE: EVIDENCE, § 402.6, at 37 (Supp.2005). The Henderson court acknowledged that many courts examine whether a party acted in bad faith or with "conscious disregard" for the importance of evidence. Henderson, 80 Wash.App. at 609, 910 P.2d 522. By noting that disregard can be sufficient to deserve a sanction, the Henderson opinion suggests that spoliation encompasses a broad range of acts beyond those that are purely intentional or done in bad faith. Henderson, 80 Wash. App. at 605, 910 P.2d 522.
¶ 21 It is possible, therefore, that a party may be responsible for spoliation without a finding of bad faith. But even under this theory, the party must do more than disregard the importance of the evidence; the party must also have a duty to preserve the evidence. A party's actions are "improper" and constitute spoliation where the party has a duty to preserve the evidence in the first place. TEGLAND, § 402.6, at 37; Henderson, 80 Wash.App. at 610, 910 P.2d 522.
¶ 22 Here, there is no evidence that Homeworks/State Farm acted intentionally or in bad faith. At most, Homeworks/State Farm failed to take steps to preserve potential evidence. Thus, the key issue is whether Homeworks/State Farm had some duty to preserve the evidence because they knew they were going to sue Wells and Thompson and whether Homeworks/State Farm breached that duty.
¶ 23 Wells and Thompson argue that a duty arises when a party knows it is going to sue and is aware of the evidence's importance. Whether an actor violated a duty to preserve evidence is an important consideration. Henderson, 80 Wash.App. at 610, 910 P.2d 522. Significantly, in Henderson, the court did not suggest that potential plaintiffs have a general duty to preserve all evidence. Instead, the Henderson court looked to other sources for duty such as the duty of a partner to preserve records or the duty of a medical provider to save medical information. See Henderson, 80 Wash.App. at 610, 910 P.2d 522. Thus, Henderson does not hold that a potential litigant owes a general duty to preserve evidence.
¶ 24 While Wells and Thompson may be correct that a party has a general duty to preserve evidence on the eve of litigation, we do not agree that this duty extends to evidence over which a party has no control. In the absence of some other basis for preserving the EIFS evidence on the Luceys' house, Homeworks/State Farm did not have a duty to prevent the Luceys from repairing their house when they did not know the Luceys were going to repair it.[2]
¶ 25 The record does not reveal any contractual obligation on the part of Homeworks/State Farm to notify the subcontractors of a potential claim; there is no mention of a hold harmless clause in the subcontract that would force Wells and Thompson to hold Homeworks harmless, defend any suit based on their work, or indemnify Homeworks in case of liability. Also, there is no evidence that the homeowners would have permitted Homeworks/State Farm or Wells and Thompson to inspect the repair work. And the parties agreed at oral argument that there was no legal method to force the Luceys to permit Wells and Thompson to inspect the house. Without evidence in the record that the Luceys notified Homeworks/State Farm that they were going to repair their house within two months of settlement, and absent evidence that Homeworks/State Farm's failure to notify Wells and Thompson was in bad faith, Homeworks/State Farm did not breach a duty to preserve the EIFS on the Luceys' house.
¶ 26 We also note that Wells and Thompson were served with a summons and complaint before the demolition had been completed and did nothing to view or preserve the evidence that they now claim was so vital. Admittedly, there was a very small window of time to inspect the house. But with more than $300,000 involved, it is not unreasonable to expect prompt action on behalf of a general contractor, who is undoubtedly aware that *659 repair conditions are optimal in our summer weather. Wells and Thompson had time to take action before demolition/repair was completed and did not. Their own conduct further undermines the trial court's decision to sanction Homeworks/State Farm by dismissing the claim via summary judgment.
¶ 27 We hold that the spoliation was not connected to Homeworks or its insurer: Neither was aware that the Luceys had commenced repairs before suing Wells and Thompson; and neither had any control over the premises or the Luceys. Thus, the trial court's decision that Homeworks/State Farm had engaged in spoliation was manifestly unreasonable and based upon untenable grounds. The trial court abused its discretion by imposing sanctions in this case. We reverse the summary judgment and remand the case for further proceedings.
¶ 28 Reversed and remanded.
We concur: HUNT, J., and VAN DEREN, A.C.J.
NOTES
[1] Because State Farm subrogated Homeworks's claim against Wells and Thompson, we will refer to the plaintiff in this case as Homeworks/State Farm.
[2] We do not address the situation in which a party knows that a third person is going to destroy evidence and does nothing about it.