# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, | No. 54425-3-II |
| Respondent, | |
| v. | |
| SEATTLE TUNNEL PARTNERS, a joint venture, TUTOR PERINI CORPORATION; DRAGADOS USA, INC., | UNPUBLISHED OPINION |
| Appellants. | |

CRUSER, A.C.J. – The Washington State Department of Transportation (WSDOT) and

Seattle Tunnel Partners (STP) entered into a contract that required STP to construct a tunnel. STP's

boring machine was damaged while it was boring the tunnel, and STP missed the contractually

required completion date. WSDOT filed suit, alleging STP breached the contract by failing to meet

the contract's deadline. STP acknowledged it did not meet the deadline but asserted the delay was

excusable under the contract. STP argued that its equipment was damaged because it encountered

a steel pipe that WSDOT failed to disclose. STP also counterclaimed, alleging WSDOT breached

the contract when it did not grant STP additional time and compensation after the equipment was

damaged.

Prior to trial, the court granted WSDOT's motions for partial summary judgment,

dismissing the portions of STP's claim that involved damage to the boring machine and

subcontractor pass-through claims. The court also sanctioned STP for losing evidence relevant to the lawsuit.

During trial, STP objected to the admittance of certain evidence offered by WSDOT and proposed evidence that the trial court excluded. STP also objected to the court's inclusion of specific jury instructions and proposed instructions the trial court declined to include. The jury ultimately found in WSDOT's favor on all claims.

On appeal, STP argues the trial court committed multiple errors in its evidentiary rulings and erred in instructing the jury. Additionally, STP contends that the court erred in sanctioning STP for losing evidence.

We affirm.[1]

FACTS

I. THE PROJECT

A. BACKGROUND

The Alaskan Way Viaduct was a critical piece of transportation infrastructure for Seattle. Following an earthquake in 2001 it was determined that the viaduct needed to be replaced with a tunnel due to damage to the viaduct.

To find an appropriate contractor to construct the tunnel, WSDOT issued a request for proposals. Along with the request, WSDOT included multiple documents, such as the contract terms and technical requirements for the project, a "Geotechnical Baseline Report" (GBR) and a "Geotechnical and Engineering Data Report" (GEDR). The GBR provided an overview of the

---

[1] STP also asks this court, in the event we reverse, to review decisions made on summary judgment that dismissed portions of its claim earlier in the proceeding below. Because we affirm, we decline to consider these assignments of error.

subsurface conditions, and the GEDR provided the data underlying the GBR. The GBR instructed that it (the GBR) "must be read in conjunction with" the GEDR. Ex. 5, at 10.

WSDOT also included "Reference Documents" to provide potential contractors additional background information. However, the Reference Documents, were not considered a part of the contract.[2]

B. STP BECOMES THE DESIGN-BUILDER FOR THE PROJECT

WSDOT selected STP's proposal. STP acknowledged that "in developing its Proposal, [STP] gave full consideration to the contents of the Geotechnical Baseline Report, Environmental Baseline Report [(EBR)] and the Geotechnical & Environmental Data Report." Ex. 2, at 24. The parties then signed a contract in which WSDOT agreed to pay STP $1.35 billion to construct the tunnel.

STP was "in complete control of defining how [STP] would proceed with both design and construction on this project." 7 Verbatim Report of Proceedings (VRP) (Oct. 14, 2019) at 728. STP was required to design and provide all the materials and labor necessary to construct the tunnel. STP hired a third company to design and manufacture a tunnel boring machine (TBM). The TBM was 425 feet long and 57 feet in diameter. The TBM had a cuttinghead design that was essentially a round disc that had spokes that were attached at the rim and met in the center. The spokes had cutting tools on the front and sides. The soil fell into a chamber behind the cuttinghead and a conveyor belt took the soil through the TBM to fall into a muck bin at the back.

---

[2] At trial the jury heard testimony that the Reference Documents were not a part of the contract.

## II. THE TBM CUTS INTO TW-2

On December 4, 2013, the TBM ran into Test Well (TW) 2, a pipe that had a "3/8 inch thick, eight-inch diameter, steel well casing." Clerk's Papers (CP) at 2164. "When the TBM struck TW-2, a portion of the pipe was pushed up from the ground," the pipe was cut, and this piece became known as Piece #1. *Id.* On December 5, 2013, STP also removed two boulders and two pieces of steel (Pieces #2 and #3) from TBM's conveyor belt. Greg Hauser, STP's Deputy Project Manager at that time, instructed employees to retain the pieces of steel pipe coming from the TBM because he knew the pipe might be the basis of a claim against WSDOT. On December 11, 2013, STP pulled a 55-foot long piece of TW-2 out of the ground, Piece #4.

On January 2, 2014, STP found another pipe piece, Piece #5, in the TBM's muck bin, as well as "a collection of small metal fragments" that became known as Piece #6. *Id.* at 2165. On January 17th, two steel pieces were extracted from the TBM's spokes, Pieces #7 and #8. Finally, on "January 25, 2014, Piece #9 came off the conveyor belt." *Id.*

At some point, Pieces #1, #2, #3, #5, #7, #8, and #9, along with the two boulders, went missing and could not be located. Hauser's work journal that covered December 2013 through February 2014 also went missing.

In February 2014, the manufacturer of the TBM directed STP to stop mining because the TBM had been damaged and needed to be repaired.

## III. DIFFERING SITE CONDITION CLAIM

On December 12, 2013, STP submitted to WSDOT an initial notice of a proposed change order, asserting TW-2 was a differing site condition (DSC). The contract defined DSCs as "actual subsurface or latent physical conditions at the Site that are substantially or materially different

from the conditions identified" in the GBR or GEDR. Ex. 3, at 12. STP claimed because the TW-2 pipe was not properly identified in the GBR or GEDR, the pipe is a DSC and STP was entitled to a time extension. WSDOT rejected STP's assertion that the pipe was a DSC, noting that TW-2 was identified in the GEDR.

Despite WSDOT's response, STP still submitted a proposed change order, again asserting that TW-2 was not fully disclosed in the GEDR. WSDOT maintained that TW-2 was not a DSC.

## IV. JUDICIAL PROCEEDINGS

On March 9, 2016, WSDOT sued STP because it failed to meet the "substantial completion deadline." *Id.* at 7. STP conceded the project was not substantially completed, but claimed that the delay was excusable because it was caused by a DSC, TW-2. STP also counterclaimed, arguing that WSDOT breached the contract when it failed to remove or advise STP of TW-2 and thus STP should have been awarded the additional time and compensation needed to address the problems caused by TW-2.

## A. SPOLIATION RULINGS

Following a discovery request to STP for "[a]ll parts of the TW-2" and "[a]ll boulders removed from the [TBM]", WSDOT moved for spoliation sanctions, arguing that STP lost or destroyed pieces of the TW-2, the two boulders, and Hauser's journal. *Id.* at 1312.

### 1. Findings of Fact

The court found, "On an unknown date, all pieces of the steel pipe except Piece #4 and Piece #6 and the boulders were lost or destroyed. The loss or destruction was not immediately discovered." *Id.* at 3245. The court also found that Piece #5 "probably" came from TW-2, but that

it could not determine that with certainty. *Id.* at 3227. One of Hauser's journals also went missing and could not be recovered.

The trial court found that STP was well aware that the pipe pieces and boulders "were critical and important" and that STP knew it needed to preserve the pipe pieces and boulders because the pipe could serve as a basis of a DSC claim. *Id.* at 3229. The court also found that WSDOT's expert testified credibly that the loss of the pipe pieces and boulders "impeded his ability to perform his analysis." *Id.* at 3254. Additionally, STP and WSDOT's experts' testimony made it clear "the missing pieces of steel pipe and boulders are important evidence." *Id.* at 3260.

Furthermore, STP recognized it had a duty to preserve the pipe pieces and boulders and knew WSDOT would want to access the materials.

The court found that STP did not intend to destroy the evidence. However, the court also found testimony by STP employees that they instructed " 'all' STP employees" orally through the chain of command to preserve the evidence was not credible. *Id.* at 3239. Rather, "there [was] a lack of documentation or instructions that was certain to communicate such instruction to all STP employees, contractors, subcontractors, and everyone who had access" to the missing evidence. *Id.*

Regarding Hauser's missing journal, the court found Hauser used journals for his work related to the tunnel project, documenting his daily work activities and relying on the journals to refresh his memory. Furthermore, the missing journal covered from December 2013 through February 2014. The court found this journal to be important "because of the inability of witnesses to identify specific communication and dates of activities associated with the missing pipe pieces and boulders." *Id.* at 3250. Despite its importance, the court found that Hauser did not know nor

6

could provide an explanation of what happened to the missing journal. But "Hauser did not intentionally destroy or hide the missing journal." *Id.*

The court found that on "December 12, 2013, STP submitted Proposed Change Order #250, asserting that TW-2 was a Differing Site Condition under the Design-Build Contract" and that the contract provided " ' [STP] agrees that it shall give WSDOT access to all of [STP]'s books, records and other materials relating to the Work in question, and shall cause its Subcontractors to do the same, so that WSDOT can investigate the basis for such proposed Change Order.' " *Id.* at 3240 (quoting Ex. 2, at 77). "[T]he term 'materials' includes any pieces of TW-2 that were recovered from the TBM, as well as other materials relating to Proposed Change Order #250, such as the boulders." *Id.*

*2. Conclusions of Law*

The court concluded that under the contract provision STP had a duty to preserve Hauser's journal, the boulders, and the pipe pieces. The pipe pieces and boulders were "critical pieces of evidence in determining the primary issue in this litigation, the cause of the stoppage of the TBM." *Id.* at 3264. Furthermore, "By its actions and inactions, STP consciously disregarded the importance of the missing pipe pieces and boulders," and the loss was "not innocent or accidental." *Id.* at 3266. Additionally, WSDOT's opportunity to examine the missing pipe pieces and boulders was not adequate. As for the journal, it was "relevant and important" and "STP provided no explanation for the loss." *Id.* at 3264, 3266.

*3. Sanctions*

The court instructed the jury as follows:

a. Instruction 18

> STP had a duty to preserve all documents and materials (including pipe pieces and boulders) related to its claim for a [DSC].
> STP lost or destroyed the following pieces of steel pipe presumed to be associated with TW-2: Pieces #1, #2, #3, #7, #8, and #9 as identified on Exhibit 249. STP also lost or destroyed Piece #5 and the two boulders also shown on Exhibit 249.
> . . . .
> You are instructed to infer that: (1) Pieces #1, #2, #3, #7, #8, and #9 did not cause damage to the TBM's cutter tools; (2) Piece No. 5 did not originate from TW-2; and (3) the two lost boulders caused damage to the TBM's cutter tools.

*Id.* at 10684.

b. Instruction 19

> STP had a duty to preserve the Hauser journal that covered the time period of December 2013 through February 2014. STP lost or destroyed that journal. . . .
> The lost or destroyed journal was not a personal journal. The entries in the journal were related to the tunnel project associated with Mr. Hauser's employment with STP.
> . . . Mr. Hauser recorded what he did, where he went, and to whom he spoke. Mr. Hauser relied on his journals as the most accurate representation of what he was doing, where he was going, and who he was speaking to. The journals were the exclusive means by which Mr. Hauser maintained such notes. Mr. Hauser made notes or journal entries during the time period December 2013 to February 2014. While the specific content of the missing journal is unknown, Mr. Hauser's journal likely contained information relating to the stoppage of the TBM, the potential cause of the stoppage of the TBM, and the interventions that were conducted into the excavation chamber and cutterhead of the TBM in January 2014.
> You may infer that the lost or destroyed journal contained information adverse to STP's positions in this case.

*Id.* at 10685.

The court also concluded that STP would not be allowed to present evidence to rebut the inferences laid out in the instruction regarding the pipe and boulders.

B. EVIDENTIARY RULINGS

*1. 2003 GEDR Supplement*

Prior to trial, STP moved to exclude any reference to a 2003 supplement to the GEDR. STP noted that the 2003 supplement was only a Reference Document, and STP argued that Reference Documents were not relevant to the case because WSDOT had told STP not to rely on Reference Documents.[3]

The court granted the motion in part, explaining that it would not allow either party to indicate the 2003 supplement was a part of the contract or that a party was put on notice "merely by the existence of the documents." *Id.* at 8962. However, the document may be admissible if WSDOT was able to show that the document was actually reviewed by STP, and could support WSDOT's theory regarding notice or foreseeability.

At trial, WSDOT elicited testimony that STP had received the 2003 GEDR supplement as an email attachment. WSDOT moved to admit the 2003 supplement, and STP objected, arguing that WSDOT had only shown the document was *received*, not *reviewed*. Despite not finding that STP had reviewed the document, the court admitted the 2003 supplement and explained foundation had been established because a witness testified there was an email exchange with a STP consultant in which the 2003 supplement was provided. However, the court did not "allow[ ] argument" or "any attempt to go through the attachment with this witness and find some piece in the attachment that is significant in terms of that communication" without some foundation that STP had reviewed the document. 13 VRP at 1488.

---

[3] STP's interest in excluding this 2003 supplement stemmed from the fact that it disclosed TW-2 was a steel pipe.

*2. Industry Standards*

STP also wanted to use industry standards to show that it reasonably relied on the GBR to determine that it would not encounter steel while mining.

The court excluded any testimony regarding the industry standard. Although the evidence was "minimally relevant," that minimal relevance did not warrant admission under ER 403. 4 VRP (Sept. 20, 2019) at 110. The court was concerned that testimony about the industry standard could confuse the jury and lead the jury to think that WSDOT breached a duty if it did not adhere to those standards.

## C. JURY INSTRUCTIONS

The relevant jury instructions in this appeal are as follows.

*1. Instruction No. 13*

To prove TW-2's steel well casing was a DSC, STP has the burden of proving:

1. That the steel casing of TW-2 was an actual subsurface or latent physical condition;
2. That such condition is substantially or materially different from the conditions that were indicated in the Contract Documents;
3. That STP reasonably relied on the conditions in the Contract Documents in making its bid; and
4. That the materially different condition was not foreseeable to STP at bid time.

CP at 10679. STP objected to instruction 13, arguing that the instruction should only include the contract language explaining what a DSC is, not the legal elements of reasonability and foreseeability. The court did not find STP's argument to be persuasive.

10

*2. Instruction No. 14*

Contract Documents are:

(a) Change Orders and Contract amendments; (b) the Design-Build Contract, including Appendices 1 through 13; (c) the Technical Requirements; (d) all other RFP (Request for Proposals) Documents listed as Contract Documents in Appendix Al to the Technical Requirements, including the Geotechnical Baseline Report (the "GBR") and the Geotechnical and Environmental Data Report (the "GEDR"); and (e) STP's Proposal.

*Id.* at 10680. STP argued that in addition to instruction 14, the jury should also be instructed that Reference Documents are *not* part of the contract and the jury could not consider Reference Documents when determining if TW-2 was a DSC. The trial court disagreed, explaining that even though STP's proposed language was factually accurate, it was neither helpful nor necessary.

*3. Instruction No. 15*

"STP has admitted, and you must accept as true, that the Geotechnical Baseline Report (GBR) and the Environmental Baseline Report (EBR) are silent with respect to the steel well casing of TW-2." *Id.* at 10681.

STP objected to instruction 15, and argued that WSDOT's admission that the GBR indicated a number of subsurface obstacles including boulders, timber, concrete, and debris should also be included. STP contended that the jury should be instructed on either both admissions, or, neither. The court did not find STP's argument to be persuasive. However, STP was still allowed to read WSDOT's admission at trial.

D. VERDICT

The jury was asked 15 questions.

The first question asked the jury to decide: "Was the steel well casing of TW-2 a Differing Site Condition?" *Id.* at 10659. Because this was the threshold question of the case, the jury was

told that if it answered "No" to question 1, then it should skip questions 2-14 and go straight to question 15. *Id.* Question 15 instructed the jury to fill in the predetermined amount of liquidated damages, which was $57,200,000.[4] The jury answered "no" to question 1.

The second question, which would have been relevant to STP's spoliation assignment of error, had the jury answered question one in the affirmative, asked, "Did a Differing Site Condition cause delay to work on the critical path that was beyond the reasonable control of STP?" *Id.* at 10660. Having answered "no" to question 1, the jury did not answer this question.

## DISCUSSION

### I. INSTRUCTIONAL ERRORS[5]

STP argues that the trial court erred in (1) instructing the jury on the definition of a DSC, (2) rejecting STP's proposed instruction regarding Reference Documents, and (3) instructing the jury on the GBR's silence regarding the composition of TW-2 while rejecting STP proposed

---

[4] Both STP's defense against WSDOT's claim and STP's counterclaim was premised on excusable delay. The steel casing being a DSC was an element for excusable delay. Accordingly, if the jury found the steel casing was not a DSC then the jury could not find excusable delay.

[5] STP argues that under the Contract Documents, TW-2's steel well casing is a DSC. For the first time in its reply brief, STP asks that we make this determination "as a matter of law," rather than address the assignments of error STP raised on appeal regarding jury instructions and evidentiary rulings. Reply Br. of Appellant at 7.

Appellate review of a jury's verdict is "limited, serving as a backstop to ensure trials are conducted fairly, the law is applied correctly, and the verdict is within the bounds of justice." *Coogan v. Borg-Warner Morse Tec Inc.*, 197 Wn.2d 790, 799, 490 P.3d 200 (2021). We will not simply substitute our judgment for that of the jury. *Id.* Although we may review a jury's verdict to determine whether it is supported by sufficient evidence, *Klem v. Washington Mutual Bank*, 176 Wn.2d 771, 782, 295 P.3d 1179 (2013), STP does not assign error to jury's verdict or argue that the verdict must be reversed on that basis. Nor does STP assign error to the trial court's decision to submit the question of whether TW-2 was a DSC to the jury as a question of fact as opposed to deciding the question as a matter of law. We thus decline to determine whether TW-2's steel well casing is a DSC.

instruction regarding WSDOT's admission on subsurface conditions disclosed in the GBR. STP contends that these instructional errors, both individually and collectively, led the jury to incorrectly conclude that the steel well casing was not a DSC.

We disagree.

A. LEGAL PRINCIPLES

Jury instructions are sufficient when "they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law." *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015). "Where substantial evidence supports a party's theory of the case, trial courts are required to instruct the jury on the theory." *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 767, 389 P.3d 517 (2017).

*1. Abuse of Discretion*

Generally, trial courts are vested with the discretion to determine whether to give a particular jury instruction. *Id.* When a trial court decision is a matter of discretion we will not disturb the decision on review unless there is "a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A trial court's decision is manifestly unreasonable if the trial court " adopts a view 'that no reasonable person would take.' " *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669 230 P.3d 583 (2010) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Duncan*, 167 Wn.2d 398, 403, 219 P.3d 666 (2009)). " 'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.' " *Id.* (quoting *Duncan*, 167 Wn.2d at 403).

" 'The number and specific language of the instructions' " is within the trial court's discretion. *Bodin v. City of Stanwood*, 130 Wn.2d 726, 732, 927 P.2d 240 (1996) (internal quotation marks omitted) (quoting *Leeper v. Dep't of Labor & Indus.*, 123 Wn.2d 803, 809, 872 P.2d 507 (1994)). Additionally, a trial court has discretion to determine "whether more specific or clarifying instructions are necessary to guard against misleading the jury." *Gammon v. Clark Equip. Co.*, 104 Wn.2d 613, 617, 707 P.2d 685 (1985). Furthermore, if the trial court's decision to give or refuse to give a particular instruction was based on its determination of a factual matter, we will review that decision for an abuse of discretion. *Taylor*, 187 Wn.2d at 767; *Kappelman v. Lutz*, 167 Wn.2d 1, 6, 217 P.3d 286 (2009).

*2. De Novo*

However, if the trial court's decision to give or refuse to give a particular instruction was based on its determination of a *legal issue*, we will review that decision de novo. *Taylor*, 187 Wn.2d at 767; *Kappelman*, 167 Wn.2d at 6. In addition, we review de novo whether a given jury instruction contains a legal error. *Fergen*, 182 Wn.2d at 803.

B. ANALYSIS

*1. DSC Definition – Instruction 13*

The trial court provided the jury with the contractual definition WSDOT and STP used for a DSC: (1) "[A]n actual subsurface or latent physical condition" that is (2) "substantially or materially different from the conditions identified in" the GBR or GEDR. CP at 10679. The jury instruction then went beyond the contractual definition and provided that STP had the burden of proving "(3) [t]hat STP reasonably relied on the conditions in the Contract Documents in making

its bid," and "(4) [t]hat the materially different condition was not foreseeable to STP at bid time." *Id.*

STP argues that including reasonable reliance and foreseeability was a clear legal error because the trial court was confined to instructing the jury only on the contract terms.[6]

WSDOT asserts that the trial court's instruction was proper because it was consistent with the legal standard, regardless of the contract language, used to establish a DSC claim.

We agree with WSDOT. Furthermore, we review this issue de novo because the trial court's decision to instruct the jury on common law elements of a DSC claim and to reject STP's proposed instruction was based on a matter of law.

a. Legal Standard for DSCs

In *King County v. Vinci Construction Grands Projects*, this court distilled the "legal standard" for establishing a DSC claim, deriving a four part test from common law principles. 191 Wn. App. 142, 165-66, 364 P.3d 784 (2015), *aff'd*, 188 Wn.2d 618 (2017). *Vinci* held that in addition to showing that (1) "the contract documents indicate[ ] certain conditions," and that (2) the "actual conditions materially differ[ ] from those that were indicated in the contract," the contractors must also demonstrate (3) "the contractor reasonably relied on those indications when making its bid," and that (4) "the materially different conditions were not foreseeable." *Id.* at 166.

---

[6] STP also contends the third and fourth elements were vague and confusing. But STP fails to provide any separate argument on this. RAP 10.3(a)(6) directs each party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Furthermore, "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). Therefore, we decline to consider this argument.

Thus reasonable reliance and lack of foreseeability are requisite elements in establishing a DSC claim, even if the contractual definition of a DSC did not include those terms. *Id.*

STP erroneously contends the four element test in *Vinci* is inapplicable to this case because of factual and procedural differences. However, the four element test identified in *Vinci* is a broadly applicable legal standard that guides the analysis of whether a given condition satisfies the requirements of a DSC claim. *Id. Vinci* did not consider the particulars of the DSC claim at issue when distilling those elements. *Id.*

Additionally, the contract in *Vinci* is similar to STP's contract with WSDOT. The contract in *Vinci* defined DSCs as " '[s]ubsurface or latent physical conditions at the site which differ materially from those indicated in the Contract Documents.' " *Compare id.* at 152 *with* Ex. 3, at 12 ("actual subsurface or latent physical conditions at the Site that are substantially or materially different from the conditions identified in the Geotechnical Baseline Report . . . or the Geotechnical & Environmental Data Report"). Moreover, although *Vinci* discussed the legal standard applicable to DSC claims in reviewing on summary judgment, that does not render the standard any less suitable in determining the applicable law for a jury instruction. 191 Wn. App. at 164-65.

The reasonable reliance requirement arises from *Maryland Casualty Co. v. City of Seattle*, 9 Wn.2d 666, 670, 116 P.2d 280 (1941). *Maryland Casualty* addressed a contractor's claim requesting additional compensation for expenses incurred when the contractor encountered conditions that increased the anticipated cost of completing the project. *Id.* at 668-69. The court adopted the following "basic principal of law:"

> '[W]here plans or specifications lead a public contractor reasonably to believe that conditions indicated therein exist, and may be relied upon in making his bid, he will be entitled to compensation for extra work or expense made necessary by conditions being other than as so represented.'

16

*Id.* at 670 (quoting Annotation, *Right of Public Contractor to Allowance of Extra Expense Over What Would Have Been Necessary if Conditions Had Been as Represented by the Plans and Specifications*, 76 A.L.R. 268 (1932)).

In addition, regarding foreseeability, it is well-settled that recovery based on a DSC claim is limited to circumstances where the differing condition was unforeseeable. *See, e.g.*, *Bignold v. King County*, 65 Wn.2d 817, 821-22, 399 P.2d 611 (1965). In *Bignold*, the supreme court held that "a finding that the contractor should have anticipated the condition will bar recovery," but recovery of additional costs incurred as a result of a changed condition will generally be permitted "when the condition complained of could not reasonably have been anticipated by either party to the contract." *Id.* Courts have consistently applied this requirement when analyzing DSC claims. *See e.g.*, *Basin Paving Co. v. Mike M. Johnson, Inc.*, 107 Wn. App. 61, 67-68, 27 P.3d 609 (2001) (holding that "a contractor cannot recover additional compensation for a 'changed condition' if the complained of condition was foreseeable) (quoting *Bignold*, 65 Wn.2d at 822); *see also Hensel Phelps Constr. Co. v. King County*, 57 Wn. App. 170, 174, 787 P.2d 58 (1990) (" 'The critical factor in application of the [quantum meruit][7] doctrine is whether the contractor should have discovered or anticipated the changed condition.' " (alteration in original) (quoting *V.C. Edwards Contracting Co., Inc. v. Port of Tacoma*, 83 Wn.2d 7, 13, 514 P.2d 1381 (1973)); *Modern Builders, Inc. of Tacoma v. Manke*, 27 Wn. App. 86, 94, 615 P.2d 1332 (1980) ("no quantum meruit compensation may be awarded for such 'additional work' necessary to carry out the contract when

---

[7] "Quantum meruit" is synonymous with a changed condition claim, or, as discussed here, a DSC claim. *See Bignold*, 65 Wn.2d at 826. The Latin term means " 'as much as deserved' " and refers to the remedy afforded to a contractor "when substantial changes occur which are not covered by the contract and were not within the contemplation of the parties, if the effect is to require extra work and materials or to cause substantial loss to the contractor." *Id.* (quoting *Losli v. Foster*, 37 Wn.2d 220, 233, 222 P.2d 824 (1950)).

the additional work should have been foreseen by the parties prior to contract formation.") (quoting *Dravo Corp. v. Municipality of Metro. Seattle*, 79 Wn.2d 214, 221, 484 P.2d 399 (1971)).

b. Adherence to Contract Language

STP argues, relying on *Berschauer/Phillips Construction Co. v. Seattle School District No. 1*, 124 Wn.2d 816, 881 P.2d 986 (1994), that the trial court was forbidden from straying from the contract language and imposing "tort-like" reasonable reliance and lack of foreseeability requirements because these requirements contravene the parties' right under contract law to agree on the allocation of risk. Br. of Appellant at 20.

*Berschauer/Phillips* does not support STP's assertion that reasonable reliance and lack of foreseeability requirements are inapplicable to contract disputes where a contract clause addresses the disputed issue but does not fully incorporate the legal standard. Rather, *Berschauer/Phillips* considered whether a contractor was entitled to recover purely economic damages by pursuing a tort claim where there was no contractual remedy available. 124 Wn.2d at 821. The court was primarily concerned with ensuring that the line between tort and contract law was not blurred such that an aggrieved party to a contract could raise a tort claim whenever a contract dispute arose. *Id.* at 826. The court cautioned that in allowing such claims, "certainty and predictability in allocating risk would decrease and impede future business activity," and threatened to expose contract parties to " 'liability in an indeterminate amount for an indeterminate time to an indeterminate class.' " *Id.* at 826-27 (quoting *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179, 174 N.E. 441 (1931)).

Here, the trial court did not threaten the certainty and predictability underlying STP and WSDOT's agreement when it incorporated well-settled common legal principles that pertained directly to the issue. *Vinci*, 191 Wn. App. at 166. Nor did the trial court improperly interpose

extrinsic tort principles in a manner that would undermine the parties' expected liability exposure. *See Berschauer/Phillips*, 124 Wn.2d at 826. This case is therefore distinguishable from *Berschauer/Phillips*, and the overriding concerns that guided the supreme court's decision in that case are not present here. *See id.*

The trial court's instruction was an accurate expression of the legal standard for establishing a DSC claim and was not misleading as to the parties' agreement. *See Vinci*, 191 Wn. App. at 166. In addition, *Berschauer/Phillips* does not support STP's contention that the only standard applicable to STP's DSC claim was the contractual definition of a DSC. Accordingly, the trial court's instruction defining STP's burden in four elements, including two elements derived from common law rules regarding DSC claims, was proper.

*2. Reference Documents Instruction*

To evaluate STP's DSC claim, the jury was required to determine whether the DSC was a substantially or materially different condition than the conditions indicated in the Contract Documents. The trial court instructed the jury that Contract Documents refers to an exclusive list of documents that it listed for the jury. The trial court did not include STP's proposed instruction explaining that Reference Documents are not Contract Documents, explaining that although STP's proposed instruction conveyed accurate factual statements, the instruction was neither helpful nor necessary.

STP does not challenge the instruction defining Contract Documents. Rather, STP argues that the trial court erred "as a matter of law" when the court rejected STP's proposed instruction that stated the Reference Documents are not part of the contract and that the jury could not consider

Reference Documents when determining if there was a DSC or whether STP was on notice regarding the steel well. Br. of Appellant at 22.

WSDOT asserts that because STP was permitted to argue its theory that the only document identifying TW-2's steel casing was a Reference Document and not a Contract Document, the jury instructions as a whole were sufficient. We agree with WSDOT.

Because the trial court's decision to refuse STP's proposed instruction did not involve resolution of a legal dispute and was predicated on whether clarification regarding Reference Documents was helpful or necessary, the applicable standard of review is abuse of discretion. *See Gammon*, 104 Wn.2d at 617; *see also Carroll*, 79 Wn.2d at 26.

When considered as a whole, the jury instructions permitted STP to argue its theory of the case that the Contract Documents did not disclose TW-2's steel well casing. The instruction that listed the elements of a DSC claim limited the jury's consideration to Contract Documents. And the corollary instruction that designated which documents are Contract Documents did not include Reference Documents. STP was therefore able to argue that the steel casing was a DSC because none of the Contract Documents mentioned that TW-2 had a steel well casing. And STP did make such an argument, asserting at length that none of the Contract Documents identified TW-2's steel well casing.

STP's argument that without its proposed instruction, the remaining instructions were misleading because the jury was free to improperly consider the Reference Document is without merit. We presume that a jury will follow a trial court's instructions. *Spivey v. City of Bellevue*, 187 Wn.2d 716, 738, 389 P.3d 504 (2017). Therefore, assuming the jury followed the DSC instruction and the Contract Document instruction, it did not consider the Reference Documents

in evaluating STP's DSC claim. Additionally, the jury was aware that Reference Documents are not Contract Documents because it heard testimony explaining that Reference Documents were provided to potential bidders but were not part of the contract.

STP has not identified any language in the DSC instruction or in the Contract Document instruction that would mislead the jury into assuming Reference Documents are Contract Documents or that it could consider Reference Documents in evaluating STP's claim. It is also worth noting that STP did not assign error to the Contract Document instruction, nor does it otherwise claim that the Contract Document instruction is misleading as to the proper scope of the documents that fit within that definition.

Even if STP's proposed Reference Document instruction would have been helpful to the jury, the trial court's refusal to propound an instruction that is merely clarifying is not an error. *See Bodin*, 130 Wn.2d at 732. Provided that the instructions "allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law . . . it is not error to refuse to give detailed augmenting instructions, nor to refuse to give cumulative, collateral or repetitious instructions." *Id.* (citation omitted). An instruction defining what *is not* a Contract Document, when there is already an instruction defining what *is* a Contract Document, is a detailed augmenting instruction. *Id.* Consequently, the trial court did not abuse its discretion in refusing STP's proposed instruction.

*3. GBR and EBR Silence Instruction*

In response to WSDOT's CR 36 request for admission[8] that asked whether STP admitted or denied that the GBR and EBR were silent with respect to TW-2's steel well casing, STP admitted that the documents were silent. The trial court instructed the jury regarding STP's admission: "STP has admitted, and you must accept as true, that the Geotechnical Baseline Report (GBR) and the Environmental Baseline Report (EBR) are silent with respect to the steel well casing of TW-2." CP at 10681.[9]

STP challenges the trial court's decision to give an instruction regarding its admission that the GBR and EBR were silent with regard to TW-2's steel well casing while rejecting its proposed instruction regarding WSDOT's admission that the GBR disclosed other subsurface conditions. First, STP argues that in so instructing the jury, the trial court unfairly overemphasized the point regarding the GBR and EBR's silence, and it confused and misled the jury regarding the effect the GBR and EBR's silence should have on the DSC determination. Additionally, STP contends the trial court's instructions precluded STP from arguing its theory that the Contract Documents' silence regarding steel proved the steel well casing was a DSC, when considered in context with the GBR's disclosure of other conditions.

---

[8] CR 36 permits parties to serve another party with a written request for the admission of the truth of any matters relating to statements or opinions of fact or of the application of law to fact.

[9] Whether the GBR and EBR were silent regarding TW-2's steel well casing was relevant in two respects. First, the contract provided that if the GBR and EBR were silent as to a given condition, STP could look to the GEDR, and the GEDR was the document that disclosed TW-2 and its location, but not the composition of TW-2's casing. Second, to determine whether TW-2's steel well casing is a DSC, the jury was required to resolve whether the condition encountered was materially or substantially different from the conditions "indicated" in the contract. CP at 10679.

WSDOT argues that the trial court was entitled to instruct the jury regarding STP's admission regarding silence and that the trial court was not obligated to also give STP's proposed instruction regarding WSDOT's admission regarding other subsurface conditions. In addition, WSDOT contends that there was no error because STP was able to argue its theory of the case under these instructions. We agree with WSDOT.

We review the trial court's decision as to the admission instructions for an abuse of discretion because the trial court did not make its decision based on a matter of law and instead considered whether the instructions were necessary or helpful to the jury. *See Gammon*, 104 Wn.2d at 617.

Here, in response to WSDOT's CR 36 request for admission, STP admitted that the GBR and the EBR were silent with regard to TW-2's steel casing. An admission made under CR 36 is conclusively established unless a court permits the admitting party to amend or withdraw the admission. CR 36(b). Trial courts are permitted to instruct the jury regarding a party's admission made pursuant to this rule. *Peralta v. State*, 187 Wn.2d 888, 900-01, 389 P.3d 596 (2017).

STP does not contest the validity of factual information conveyed in the instruction. Instead, it contends that the instruction "misstated the law" and "seriously mislead the jury" because it permitted WSDOT to argue that the silence regarding steel in the GBR and EBR meant that the steel was not a DSC. Br. of Appellant at 26. This argument lacks merit. The instruction did nothing more than state a fact to which STP admitted, it did not state, much less misstate, an issue of law regarding the implications arising from that silence.

The instruction likewise did not preclude STP from arguing its theory that the steel well casing was a DSC because the Contract Documents disclosed some subsurface conditions but did

not disclose steel. Rather, STP was permitted to read WSDOT's admission regarding subsurface conditions disclosed in the GBR into the record. In addition, during its closing argument, STP emphasized the precise theory STP claims it was precluded from raising. For example, STP argued:

> Everybody that testified here has said the contract documents, including the GBR and the GEDR, did not identify steel. Steel is materially different, substantially different, than other manmade objects such as concrete, bricks, asphalt that were identified in the documents. Or boulders and cobbles that are naturally occurring conditions that were identified in the contract documents.

52 VRP (Dec. 12, 2019) at 6363.

The trial court did not abuse its discretion when it instructed the jury as to STP's admission but declined to instruct the jury as to WSDOT's admission because the instructions were not misleading and STP was not precluded from arguing its theory of the case. *Bodin*, 130 Wn.2d at 732.

## II. EVIDENTIARY RULINGS

STP argues the trial court erred when it admitted the 2003 supplement and excluded evidence regarding industry standards.

We hold that even if the trial court erred in admitting the GEDR supplement, it was harmless. Additionally, we hold the trial court did not err in excluding industry standard evidence.

### A. ADMISSIBILITY OF EVIDENCE STANDARDS

Generally, relevant evidence is admissible unless it is subject to a limitation. ER 402. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." ER 401. Accordingly, relevance is a low bar for admissibility of evidence, "and even minimally relevant evidence is admissible." *Kappelman*, 167 Wn.2d at 9.

"We review a trial court's decision to admit or exclude evidence for an abuse of discretion." *Salas*, 168 Wn.2d at 668. Furthermore, a verdict will not be reversed based on an evidentiary error unless that error was prejudicial. *Diaz v. State*, 175 Wn.2d 457, 472, 285 P.3d 873 (2012). "An error is not prejudicial unless it affects, or presumptively affects, the outcome of the trial." *Id.*

B. 2003 SUPPLEMENT

STP sought to exclude a 2003 supplement to the GEDR that contained information about the test wells, including TW-2, and that some of the TWs were made of steel. The trial court ruled that unless WSDOT laid a foundation that showed STP actually reviewed the 2003 supplement, the document was irrelevant. At trial, when WSDOT moved for admission of the 2003 supplement, STP objected, arguing that WSDOT had not shown that STP had reviewed the 2003 supplement. Nevertheless, the trial court admitted the 2003 supplement. However, the trial ruled that until WSDOT established STP had reviewed the 2003 supplement, the court would not allow "any attempt to go through the attachment with th[e] witness and find some piece in the attachment that is significant in terms of that communication." 13 VRP (Oct. 17, 2019) at 1488.

STP argues that the trial court erred in admitting the 2003 supplement and its admission was not harmless. STP contends that the jury could have been confused by testimony that suggested the 2003 supplement was " 'within' " the GEDR and, therefore, because the 2003 supplement disclosed TW-2 had steel casing, the GEDR disclosed steel. Br. of Appellant at 34.

We hold that even assuming, without deciding, that the trial court erred in admitting the 2003 supplement, the error was harmless.

25

There was testimony expressly stating that the 2003 supplement was a Reference Document, and there was testimony stating Reference Documents are not Contract Documents. Furthermore, the Contract Documents were specifically defined in the jury instructions; the jury knew exactly which documents it was required to look at to determine whether steel was disclosed in the Contract Documents. Because we presume juries follow instructions, STP must show that the jury disregarded the instructions. *Terrell v. Hamilton*, 190 Wn. App. 489, 504, 358 P.3d 453 (2015). STP points us to nothing in the record that would indicate the instructions were disregarded by the jury. Consequently, we hold that any error was harmless.

C. INDUSTRY STANDARDS EVIDENCE

STP argues that the court should have admitted evidence of industry standards because industry standards are relevant for determining whether STP reasonably relied on the GBR to the exclusion of the other documents, noting it is industry standard to disclose everything in the GBR.

We hold the trial court did not err in excluding the industry standards evidence.

Regardless of the industry standards, the facts show that STP was not permitted to rely solely on the GBR and in fact STP was required, and did, rely on the GEDR as well. Under the contract STP "acknowledge[d] that, in developing its Proposal, [STP] gave full consideration to the contents of the . . . [GEDR]." Ex. 2, at 24. Additionally, under the contract, if the GBR and EBR were silent "with *respect to a particular* geotechnical or environmental condition," STP could also consider the conditions specified in the GEDR." *Id.* And STP admitted the GBR was silent as to wells. STP also acknowledges on appeal that "[t]hree Contract Documents determine whether a DSC exists: the GBR; . . . ("EBR"); *and* the Geotechnical Environmental Data Report ("GEDR"). Br. of Appellant at 9 (emphasis added).

26

Moreover, the information contained in the GBR as opposed to the GEDR is not the salient issue here. Rather, the salient issue is whether WSDOT informed STP that the TBM would encounter steel. Therefore, the trial court did not abuse its discretion by excluding evidence regarding industry standards.

### III. SPOLIATION

STP argues that the court erred in sanctioning STP after STP lost seven pieces of TW-2, two boulders, and a journal written by STP's Deputy Project Manager. STP contends that even if it should be held responsible for the missing evidence, the court abused its discretion in imposing overly severe sanctions.

WSDOT argues that even if the trial court erred it was harmless because the spoliation instructions concerned causation and the jury never reached causation.

We agree with WSDOT.

A. LEGAL PRINCIPLES

*1. Spoliation*

Spoliation has been defined as " '[t]he intentional destruction of evidence.' " *Henderson v. Tyrrell*, 80 Wn. App. 592, 605, 910 P.2d 522 (1996) (alteration in original) (quoting *Spoliation*, BLACK'S LAW DICTIONARY 1401 (6th ed. 1990)). But under Washington law, spoliation involves situations "[w]here relevant evidence which would properly be a part of a case is within the control of a party whose interests it would naturally be to produce it and he fails to do so, without satisfactory explanation." *Pier 67, Inc. v. King County*, 89 Wn.2d 379, 385, 573 P.2d 2 (1977).

To help determine whether a party has provided a "satisfactory explanation," courts have considered the *Henderson* factors: (1) "the culpability or fault of the adverse party;" and (2) "the

potential importance or relevance of the missing evidence." *Homeworks Const., Inc. v. Wells*, 133 Wn. App. 892, 898-99, 138 P.3d 654 (2006). For both factors, courts have considered a range of circumstances to determine whether the evidence was important or the party was responsible. *Cook v. Tarbet Logging, Inc.*, 190 Wn. App. 448, 462, 360 P.3d 855 (2015); *Tavai v. Walmart Stores, Inc.*, 176 Wn. App. 122, 135-36, 307 P.3d 811 (2013); *Ripley v. Lanzer*, 152 Wn. App. 296, 326, 215 P.3d 1020 (2009); *Homeworks*, 133 Wn. App. at 899; *Henderson*, 80 Wn. App. at 607-10.

The severity of the spoliation determines the appropriate severity of the corresponding sanction. *Henderson*, 80 Wn. App. at 605. We review a trial court's decision regarding a spoliation sanction for an abuse of discretion. *Cook*, 190 Wn. App. at 461.

*2. Harmless Error*

An error is harmless " 'if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole.' " *Cook*, 190 Wn. App. at 474 (quoting *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997)). A trial court's erroneous evidentiary ruling will not be considered prejudicial, and is therefore harmless, when the outcome of the trial would not, within reasonable probabilities, have been materially affected absent the error. *Id.*

B. ANALYSIS

Even though the case was decided entirely on the threshold question of whether the steel well casing of TW-2 was a differing site condition, and not on causation, STP asserts that it suffered prejudice from the court's ruling because the spoliation sanctions painted them in a "bad light," that likely tainted the jury's consideration of the threshold question and precluded the jury from rendering a fair verdict. Reply Br. of Appellant at 28. Furthermore, STP argues it was

prejudiced because the jury was instructed that the journal had adverse information to STP's "position[s]." *Id.* at 29.

STP fails to show that the court's spoliation sanctions regarding the missing pipe pieces and boulders had any bearing on the outcome of the trial as to the threshold DSC question. STP identifies nothing to indicate that the adverse instruction relating to what caused the damage to the TBM, a question the jury never reached, had any bearing on the jury's decision on the threshold of question of whether the TW-2 was a DSC. *See Cook*, 190 Wn. App. at 474. The DSC question related entirely to what the parties knew at the time of the contract formation, which was primarily addressed by reference to the Contract Documents.[10]

Further, as it relates specifically to Hauser's journal, STP merely notes that the jury was instructed that it may infer the journal "contained information adverse to any 'position' STP took in the entire case." Reply Br. of Appellant at 29. But STP does not include any argument about how that affected the outcome of the case. Although it is possible that the jury used that inference to determine that TW-2 was not a DSC, STP provides no evidence to support that strained assumption. Rather, the spoliation instruction on the journal explained that "the specific content of the missing journal is unknown," but the "journal likely contained information relating to the stoppage of the TBM, the potential cause of the stoppage of the TBM, and the interventions that were conducted into the excavation chamber and cutterhead of the TBM in January 2014." CP at

---

[10] To the extent STP argues that the sanctions are relevant to the question of DSC because the court's instructions on the spoliation painted STP in a bad light, the instructions did not paint STP in any worse light than the evidence of the conduct itself, the admission of which STP does not challenge.

No. 54425-3-II

10685. The instruction indicated that any information in the journal would have likely concerned the causation element, not the DSC element.

In sum, there is not a reasonable probability that the trial's outcome was materially affected, and STP fails to show that the trial court's error, if any, was not harmless. *See Cook*, 190 Wn. App. at 474.

## CONCLUSION

We hold that either the trial court did not err, or if the court erred, the error was harmless. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

WORSWICK, J.

VELJACIC, J.

30